**In re Nash GALVAN and Wendy Galvan, Debtors.**

**Nash GALVAN and Wendy Galvan, Appellants,**

v.

**Nash GALVAN and Mary Galvan, Appellees.**

**BAP No. NC–87–2035–MePeMo. Bankruptcy No. 586–2064–M. Adv. No. AL 860159.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument Jan. 18, 1989.

Decided Feb. 21, 1990.

James J. Gold, Gold and Hammes, San Jose, Cal., for appellants.

Colin J. Heran, Heran and Heran, Sunnyvale, Cal., for appellees.

Before MEYERS, PERRIS and MOOREMAN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

We are asked whether 11 U.S.C. § 522(f)(1) may be employed to avoid the unsecured portion of a judicial lien. We AFFIRM in part and REVERSE in part.

### II

### FACTS

Nash and Wendy Galvan ("Debtors") filed a joint petition under Chapter 13 of the Bankruptcy Code. The residence in which they held title at the time had a fair market value of $94,500 and was encumbered by an $82,207 senior trust deed and a $32,182 judicial lien, the latter having been fixed upon the property by Nash Galvan's parents ("Parents"). The Debtors sought to remove the judicial lien. They filed a motion to have it avoided pursuant to Section 522(f)(1), urging that it impaired a $45,000 state homestead exemption to which they were entitled. The trial court permitted the lien to be avoided to the extent of $12,293—an amount equal to the value of the residence less the trust deed— and classified the remainder of the lien as a *secured claim* to be paid in full under the Debtors' Chapter 13 plan.

### III

### DISCUSSION

The Debtors challenge the order of the trial court to the extent that it categorizes the Parents' judicial lien as a *secured claim*. They urge that the entire lien is avoidable under Section 522(f)(1), and, if not, that it is otherwise unsecured under Section 506.

The property of the bankruptcy estate includes, among other things, all the legal and equitable interests of the debtor as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–06, 103 S.Ct. 2309, 2312–14, 76 L.Ed.2d 515 (1983); *In re Sluggo's Chicago Style, Inc.*, 94 B.R. 625, 627 (9th Cir. BAP 1988). The debtor may remove such property from the bankruptcy estate and thereby place the same beyond the reach of creditors by claiming exemptions. 11 U.S.C. § 522(b); *In re Woodson*, 839 F.2d 610, 616 n. 8 (9th Cir.1988). Such exemptions may be claimed to the extent that the debtor has equity in the property sought to be exempted. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360–61 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The requirement that the debtor possess equity in the property sought to be exempted ordinarily precludes the debtor from claiming exemptions in property which is fully encumbered at the petition date. Section 522(f)(1) eases this restriction by permitting the debtor to *create* equity in limited circumstances and then use the equity created to claim exemptions that would have otherwise been unavailable. *In re Simonson*, 758 F.2d 103, 108 (3d Cir.1985) (Becker, J. dissenting); *ALU v. State of N.Y. Dept. of Tax. & Finance*, 41 B.R. 955, 957 (E.D.N.Y.1984).

Section 522(f)(1) provides that the debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would otherwise have been entitled. *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1337 n. 15 (9th Cir.1985); *In re Pederson*, 78 B.R. 264 (9th Cir. BAP 1987), *aff'd*, 875 F.2d 781 (9th Cir.1989); *In re Baxter*, 19 B.R. 674, 675 (9th Cir. BAP 1982). Congress hoped that the lien-avoidance established under Section 522(f) would leave enough property in the hands of the debtor to insure a "fresh start" after discharge. *In re Hall*, 752 F.2d 582, 588 (11th Cir.1985); *In re Owen*, 70 B.R. 366, 367 (N.D.Ind.1987). Its application extends to proceedings under Chapter 13. *In re Hall, supra*, 752 F.2d at 588–90; *In re McKay*, 732 F.2d 44 (3d Cir.1984). This lien-avoidance can be pursued by motion for such an action to avoid a lien under Section 522(f) is an exception to the general rule that an action to avoid a lien must be brought by

complaint. *See In re Chabot,* 100 B.R. 18, 19 n. 2 (C.D.Cal.1989); B.R. 4003(d).

## A. *The Determination of the Available Exemption*

The first step in establishing whether a particular judicial lien is avoidable under Section 522(f)(1) is to determine whether the debtor would have been entitled to claim an exemption in the absence of the lien. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978). Because exemptions are available only to the extent that the debtor possesses equity in the property sought to be exempted, the fact finder must calculate the extent to which the debtor would possess such equity in the absence of the judicial lien at issue.

Equity in this sense is found by deducting the security interests in the property sought to be exempted—exclusive of the judicial lien at issue and the unsecured interests, if any, which are junior in priority to the judicial lien—from the value of such property. The exemption available for use by the debtor in terms of Section 522(f)(1), what we will refer to as the debtor's *available exemption,* is equal to the lesser of (1) the equity of the debtor in the property sought to be exempted or (2) the maximum value of the exemption claimed.

## B. *The Determination of Impairment*

The second step in establishing whether a particular judicial lien is avoidable under Section 522(f)(1) is to determine the extent to which the available exemption is *impaired* by the judicial lien. This requires the fact finder to subtract the allowed amount of the judicial lien from the equity determined to exist in the preceding paragraph. If after subtracting the lien from such equity there remains a property interest which is greater in value than the available exemption, no impairment exists. If the deduction leaves equity which is less than the available exemption, impairment arises to the extent of the deficiency. If no equity remains, impairment of the available exemption is complete.

The extent to which the judicial lien is determined to *impair* the available exemption is the extent to which the judicial lien is *avoidable.* Section 522(i)(1) provides that the debtor may recover the avoided transfer in the manner prescribed by and subject to the limitations of Section 550 and further that the debtor may exempt that property so recovered under Section 522(b). 11 U.S.C. §§ 101(50), 522(i), 550. The debtor may thus recover the avoided portion of the judicial lien, or the value thereof, for the benefit of the estate and then to exclude such value from the estate by claiming an exemption.

We find the trial court's application of Section 522(f)(1) to be sound as far as it went. The court deducted the $82,207 senior consensual lien from the Debtors' $94,500 residence and thereby determined that the Debtors had equity of $12,293 in the absence of the Parents' judicial lien. Because their $45,000 claimed exemption exceeded this equity, the court established that they had an available exemption, in terms of Section 522(f)(1), in the like amount of $12,293.

The trial court then proceeded to deduct the $32,182 judicial lien from the equity of $12,293. Because no equity remained, the judicial lien was held to be avoidable to the extent of $12,293, an amount which was then preserved for the benefit of the bankruptcy estate. We find that this portion of the trial court's order was a correct interpretation of Section 522(f)(1). *See In re Baxter, supra,* 19 B.R. at 675.

However, the trial court further ruled that the remainder of the "lien" was unaffected. It is this refusal to avoid the remaining $19,889 of the judicial lien, which it treated as a "secured claim to be paid in full through the plan," that troubles the Panel.

The trial court's decision is admittedly in accord with a number of decisions which decline to allow a debtor to avoid that portion of a judicial lien which was unsecured at the date of the petition. *See In re Simonson, supra,* 758 F.2d at 105–06; *ALU v. State of N.Y. Dept. of Tax. & Finance, supra,* 41 B.R. at 957–58; *In re*

*West,* 68 B.R. 647, 648–49 (C.D.Cal.1986); *In re Owen, supra,* 70 B.R. at 368; *In re Chabot, supra,* 100 B.R. at 20–22. These decisions take a narrow view of the function of Section 522(f)(1), vis-a-vis unsecured "liens." Those decisions recognize that under Subsection (a) of Section 506 a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured. *U.S. v. Ron Pair Enterprises, Inc.,* — U.S. ——, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). However, they suggest that debtors must rely specifically on Section 506(d), which constitutionally allows a bankruptcy court to avoid liens that exceed the value of the collateral. *See* Note, *Can a Debtor Void a Real Property Lien That Exceeds the Value of the Collateral? An Interpretation of Section 506(d) of the Bankruptcy Code,* 45 Wash. & Lee Law Rev. 1393, 1402 (1988). *But see In re Dewsnup,* 87 B.R. 676, 683 (Utah 1988). The need to rely on Section 506(d) places an additional burden on debtors, especially consumer debtors, since the generally accepted view is that such lien avoidance can only be accomplished via the filing of a formal complaint under B.R. 7001. *See In re Fry,* 83 B.R. 778, 779 (Colo.1988). In the Ninth Circuit, however, a debtor can apparently deal with the unsecured portion of a lien through the confirmation of a Chapter 13 plan. *See In re Hougland,* 886 F.2d 1182 (9th Cir.1989).

We view decisions confining the use of Section 522(f) to avoidance of the collateralized portion of judicial liens only, as taking an unnecessarily restrictive view of the powers vested in Section 522(f)(1). While we applaud efforts to define properly the various avoidance roles of Sections 506(d) and 522(f), we do not read these sections as mutually exclusive. Instead, we read Section 522(f) to ascertain the congressional intent and give effect to the legislative will by implementing its objective and policy. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *In re Cecchini,* 780 F.2d 1440, 1442 (9th Cir.1986). Section 522(f) is one of the significant provisions of the Bankruptcy Code directed to assuring that the debtors

gain a fresh start in their financial lives. *In re Braddon,* 57 B.R. 677, 679 (W.D.N.Y. 1986). *See also Cross, The Application of Section 522(f) of the Bankruptcy Code in Cases Involving Multiple Liens,* 6 Bankr. Dev.J. 309 (1989). This concept of a fresh start includes reaping the fruits of post-petition appreciation of the debtor's real estate. *See In re Kruger,* 77 B.R. 785, 787 (C.D.Cal.1987).

 To implement Congressional will to provide a fresh start, it is essential that the avoidance powers provided in Section 522(f) not be unduly restricted. We view cases such as *In re West, supra,* 68 B.R. at 647, that give Section 522(f) limited application, as not properly construing the concept of impairment in light of the purpose of Section 522(f). Whether a particular lien "impairs" an exemption is to be determined solely under federal bankruptcy law. *In re Kruger, supra,* 77 B.R. at 786. Allowing the unsecured portion of a judicial lien to remain as a charge against property, in which the debtor has exemption rights, is a significant impairment of the debtor's right to a fresh start. As the Panel noted in *In re Charles,* 25 B.R. 331 (9th Cir. BAP 1982):

> A prospective buyer, upon discovering the existence of such liens and realizing that the judgment debtor cannot transfer his homestead rights, will pay the debtor a lesser sum for his homesteaded property, in proportion to the amount of the attached liens. In this way, the mere attachment of the lien may effectively preclude the judgment debtor from obtaining the full potential value of his homestead.

25 B.R. at 333. This caution is echoed by other courts and commentators, who are concerned that unsecured liens allowed to remain on the debtor's property will impair a debtor's fresh start by partaking in post-petition property acquisitions and equity build up. *See In re Rappaport,* 19 B.R. 971, 973 (E.D.Pa.1982); Bowmar, *Avoidance of Judicial Liens that Impair Exemptions in Bankruptcy,* 63 Am.Bankr. L.J. 375, 389 (1989). We therefore hold that the unsecured portion of a judicial lien

is properly avoided under Section 522(f) as it "impairs" the debtor's right to fully realize any homestead exemption and post-petition property appreciation.

■ Our holding is in accord with such cases as *In re Rehbein*, 49 B.R. 250 (D.Mass.1985), which states that:

Where the value of the unavoidable liens and the total amount of the Debtor's claimed exemptions exceeds the value of a bankrupt's property, judicial liens may be avoided to their *full extent*, because any payment toward such liens would impair the Debtor's exemptions (Emphasis added).

49 B.R. at 253. *See also In re Brown*, 734 F.2d 119, 125 (2d Cir.1984); *In re Pitre*, 11 B.R. 777, 780–81 (N.D.Ill.1981); *In re Carney*, 47 B.R. 296, 299 (D.Mass.1985); *Bowmar, supra*, 63 Am.Bankr.L.J. at 389–90. In the instant case the trial court erred in refusing to avoid the entire judicial lien held by the Parents, as it impairs the debtors' homestead rights, in its entirety. Therefore, the entire $32,182 lien should have been avoided on the debtors' Section 522(f) motion.[1]

■ In reaching this decision the Panel notes the more complex scenario presented in such cases as *In re Chabot, supra*, 100 B.R. 18. There the judicial lien creditor may wish to challenge the bona fides of consensual liens in order to establish fully if there is any impairment of the debtor's exemption rights. We believe that in the context of a contested matter brought under Section 522(f)(1), a judicial lien creditor can gain the necessary access to judicial process to present its position fully. In this regard, we note the clear requirements of B.R. 9014 that the fundamental requisites of due process must be equally satisfied in a contested matter as in an adversary proceeding. *In re Zumbrun*, 88 B.R. 250, 252 (9th Cir. BAP 1988).

In summary, we hold that Section 522(f)(1) can be used to avoid the secured portion of any judicial lien to the extent that the security could otherwise be claimed as exempt property and that the unsecured portion of any judicial lien is likewise avoided in its entirety as it also impairs homestead rights. This approach forwards Congressional intent by providing debtors with the value attributed to their homestead exemptions and post-petition appreciation gained from the debtors' property. To the extent that cases such as *In re Chabot, supra*, 100 B.R. 18, take an approach in contradiction to that expressed here, they are disapproved by the Panel.

## IV

### CONCLUSION

Section 522(f)(1) was available to avoid the entirety of the Parents' judicial lien. Therefore, the trial court's order is AFFIRMED as to the avoidance of the secured portion of the judicial lien and REVERSED as to the failure to avoid the remainder of the judicial lien.

---

1. We recognize that in this case the mechanical application of Section 522(f) is rather straightforward as the judicial lien is the junior encumbrance on the property. Other cases can be more involved and will require more intense consideration. *See In re Duncan*, 43 B.R. 833

(D.Alaska 1984). Those faced with more complex situations may benefit from the thoughtful approaches found in *In re Braddon, supra*, 57 B.R. at 679; *In re Kruger, supra*, 77 B.R. at 788–89.